**LEE LITIGATION GROUP, PLLC**
CK Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTONELLA SUAREZ,<br>*on behalf of herself, FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>INTRINSIC CONSTRUCTION GROUP LLC,<br>JERRY INDUSTRIOUS, and<br>TIJUANA GREEN,<br><br>Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff ANTONELLA SUAREZ (“Plaintiff”) on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Complaint against Defendants, INTRINSIC CONSTRUCTION GROUP LLC (“Corporate Defendant”), JERRY INDUSTRIOUS and TIJUANA GREEN (“Individual Defendants,” and collectively with Corporate Defendant, “Defendants”) and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* (“FLSA”), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime compensation, due to time-shaving, (2) liquidated damages, and (3) attorneys’ fees and costs.

2. Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime compensation, due to time-shaving, (2) liquidated damages, (3) statutory penalties, and (4) attorneys' fees and costs.

3. Plaintiff further alleges, on an individual basis, that Defendants discriminated against her on the basis of her pregnancy in violation of the New York State Human Rights Law, New York Executive Law § 296 *et seq.* ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL") and brings this action against Defendants to recover: (1) compensatory damages, (2) punitive damages, and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391, as Defendants perform substantial business in this district.

## PARTIES

6. Plaintiff, for all relevant time periods, was a resident of Kings County, New York.

7. Corporate Defendant INTRINSIC CONSTRUCTION GROUP LLC is a domestic limited liability company organized under the laws of the State of New York with an address for service of process located at 80 State Street, Albany, NY 12207 and a principal place of business located at 113 Harman Street, Brooklyn, NY 11221.

8. Individual Defendant JERRY INDUSTRIOUS and Individual Defendant TIJUANA GREEN are owners of the Corporate Defendant.

9. At all relevant times, Individual Defendant JERRY INDUSTRIOUS exercised direct and actual functional control and oversight of the business and financial operations, as well as all other general affairs, of the Corporate Defendant. Individual Defendant JERRY INDUSTRIOUS exercised the power to (and also delegated to managers and supervisors the power to): (i) hire and fire all employees of the company (including Plaintiff, FLSA Collective Plaintiffs, and Class Members), (ii) determine their hourly rates or salaries, frequencies of payments, and means of payments, (iii) establish, alter, or otherwise affect their work schedules, (iv) otherwise directly or indirectly affect the qualities, terms and conditions of their employments, and (v) maintain their employment records. At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class Members had the ability to, and/or actually did, complain to Individual Defendant JERRY INDUSTRIOUS directly regarding any of the terms of their employments, and he would have the actual power and authority to immediately, directly, and actually affect any changes to the qualities and terms of their employments to appease their complaints (including, but not limited to, immediately changing their schedules, compensation, locations, or positions).

10. At all relevant times, Individual Defendant TIJUANA GREEN exercised direct and actual functional control and oversight of the business and financial operations, as well as all other general affairs, of the Corporate Defendant. Individual Defendant TIJUANA GREEN exercised the power to (and also delegated to managers and supervisors the power to): (i) hire and fire all employees of the company (including Plaintiff, FLSA Collective Plaintiffs, and Class Members), (ii) determine their hourly rates or salaries, frequencies of payments, and means of payments, (iii) establish, alter, or otherwise affect their work schedules, (iv) otherwise directly or indirectly affect

the qualities, terms and conditions of their employments, and (v) maintain their employment records. At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class Members had the ability to, and/or actually did, complain to Individual Defendant TIJUANA GREEN directly regarding any of the terms of their employments, and she would have the actual power and authority to immediately, directly, and actually affect any changes to the qualities and terms of their employments to appease their complaints (including, but not limited to, immediately changing their schedules, compensation, locations, or positions).

11. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

12. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees, including laborers, elevator operators, scaffolders, demolition workers, construction workers, and bricklayers, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

13. At all relevant times, Plaintiff and FLSA Collective Plaintiffs have been and are similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules—all of which have culminated in a willful failure and refusal to pay Plaintiff for all hours worked, due to time-shaving. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

14. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective

Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

**RULE 23 CLASS ALLEGATIONS – NEW YORK**

15. Plaintiff brings claims for relief pursuant to the Federal Rule of Civil Procedure ("F.R.C.P.") 23, on behalf of all current and former non-exempt employees employed as laborers, elevator operators, scaffolders, demolition workers, construction workers, and bricklayers, among others, by Defendants on or after the date that is six (6) years before the filing of the Complaint (the "Class").

16. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

17. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

18. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices

of Defendants, including failing to pay wages, including overtime compensation, due to time-shaving. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

19. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation as well as employment litigation and have previously represented plaintiffs in wage and hour cases.

20. A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect

to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

21. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

22. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a) Whether Defendants employed Plaintiff and the Class Members within the meaning of the New York law;

b) What were and are the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and the Class Members for their work;

d) Whether Defendants operated their business with a policy of failing to pay Plaintiff and the Class Members for all hours worked, due to time-shaving;

e) Whether Defendants provided to Plaintiff and the Class Members proper wage and hour notices at date of hiring as required under the New York Labor Law; and

f) Whether Defendants provided proper wage statements informing Plaintiff and Class Members of their proper overtime rate of compensation and other information required to be provided on wage statements with each payment of wages, as required under the New York Labor Law.

## STATEMENT OF FACTS

*Plaintiff's Employment Background*

23. On or around March 13, 2025, Plaintiff was hired by Defendants to work as an elevator operator for Defendants at their job site on 126-43 Willis Point Boulevard, Corona, NY 11368.

24. From the beginning of her employment with Defendants to October 2025, Plaintiff was scheduled to work six (6) days per week, from 6:00 a.m. to 4:00 p.m., for a total of sixty (60) hours per week. FLSA Collective Plaintiffs and Class Members worked shifts of similar lengths.

25. In or around October 2025, upon learning of Plaintiff's pregnancy, Defendants unlawfully reduced Plaintiff's scheduled work hours by fifty percent (50%) — from approximately sixty (60) hours per week to thirty (30) hours per week. Beginning in or around January 2026 and continuing through the end of her employment, Defendants further reduced Plaintiff's scheduled work hours to five (5) to six (6) days per week, from 8:00 a.m. to 12:00 p.m., totaling approximately twenty (20) hours per week, down from the thirty (30) hours per week she had been receiving since October 2025. Defendants then terminated her on January 30, 2026.

26. At all relevant times, Plaintiff was compensated at a rate of twenty-two dollars ($22) per hour.

*Unpaid Wages, due to Timeshaving*

27. At all relevant times, Plaintiff and other employees were only paid for their scheduled hours. However, Defendants often required Plaintiff to stay at work for approximately thirty (30) minutes after the official end of her scheduled shift on a daily basis. As a result of this practice, Plaintiff, FLSA Collective Plaintiffs, and Class Members were time-shaved around 2.5 hours for each week they worked.

28. At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class Members were given a thirty (30) minute lunch break. Despite this allotted break, on a daily basis, Plaintiff's lunch break was interrupted, as Defendants required her to operate construction hoists during this time. As a result of this policy, Defendants are liable for an additional 0.5 hours of unpaid compensation daily. Defendants similarly interrupted FLSA Collective Plaintiffs' and Class Members' lunches.

29. Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours worked, due to timeshaving, in violation of the FLSA and NYLL.

*WTPA Claims*

30. At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Class Members, in violation of the Wage Theft Protection Act ("WTPA"), incorporated into the NYLL.

31. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and

statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

32. New York courts continue to find sufficient standing to support these claims. One such court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

33. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez*. By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with accurate wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

34. By failing to report all of Plaintiff's and Class Members' hours, Defendants were able to reduce the employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an

employee's W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

35. Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' timeshaving. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants' intentional hiding of that information, Plaintiff and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

36. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

37. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff with wage notices and accurate wage statements, in violation of the NYLL.

*<u>Individual Pregnancy Discrimination Allegations</u>*

38. Defendants discriminated against Plaintiff by substantially reducing her work hours, denying her equal terms, conditions, and privileges of employment, and eventually terminating her employment after learning that she was pregnant.

39. On or about September 15, 2025, Plaintiff suffered a workplace injury and was taken to the emergency room. While receiving medical care, Plaintiff learned that she was pregnant. In or around October 2025, Plaintiff notified Defendants of her pregnancy. Shortly thereafter, Defendants reduced Plaintiff's scheduled work hours by half, from approximately sixty (60) hours per week to thirty (30) hours per week. Plaintiff did not request this and was able to work her full schedule.

40. During the course of Plaintiff's pregnancy, Plaintiff notified Defendants of her scheduled doctor's visits with her Obstetrician-Gynecologist and other medical specialists. On those occasions, Individual Defendant JERRY INDUSTRIOUS advised Plaintiff that she must take the whole day off to attend her doctor appointments, rather than providing Plaintiff with any reasonable accommodation or schedule flexibility.

41. In or around January 2026, Individual Defendant JERRY INDUSTRIOUS notified Plaintiff via text message that she would be switched to a part-time schedule, further reducing her hours to five (5) to six (6) days per week from 8:00 a.m. to 12:00 p.m., totaling approximately twenty (20) hours per week. *See* **Exhibit A**. The reason given to Plaintiff was that the reduction was for "Plaintiff's security and the company's security," or words to that effect—a pretextual justification unsupported by any medical documentation or legitimate business reason. On or about January 30, 2026, Defendants removed Plaintiff from their work schedule entirely.

42. As a result of Defendants' discriminatory conduct against Plaintiff while she was pregnant, Plaintiff sustained injury, including economic damages, past and future egregious emotional distress, and the costs of bringing this action.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT ON BEHALF OF PLAINTIFF AND FLSA COLLECTIVE PLAINTIFFS

43. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

44. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

45. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

46. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.00.

47. At all relevant times, Defendants knowingly and willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them all their owed wages, including overtime wages, due to a policy of timeshaving.

48. Records, if any exist, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of the Defendants. Plaintiff intends to obtain these

records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, Plaintiff will then seek leave of Court to amend this Complaint to set forth the precise amount due.

49. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

50. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (*i.e.*, double) damages pursuant to the FLSA.

51. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, unpaid overtime wages and premiums, and an equal amount as liquidated damages.

52. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to the FLSA.

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**
**ON BEHALF OF PLAINTIFF AND CLASS MEMBERS**

53. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

54. At all relevant times, Plaintiff and the Class Members were employed by the Defendants within the meaning of the New York Labor Law §§ 2 and 651.

55. At all relevant times, Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them all their owed wages, including overtime, due to a policy of timeshaving.

56. Defendants failed to provide a proper wage and hour notice, on the date of hiring and annually, to Plaintiff and Class Members in violation of the NYLL.

57. Defendants failed to provide accurate wage statements with every payment issued to Plaintiff and the Class Members, in violation of the NYLL.

58. Due to Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants all their unpaid wages, including overtime wages, liquidated damages, statutory penalties, reasonable attorneys' fees and costs and disbursements of this action.

**COUNT III**

**DISCRIMINATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**

**(New York State Executive Law § 296 *et seq.*)**

59. Plaintiff realleges and incorporates all the above allegations, pursued on an individual basis, of this Complaint as fully set forth herein.

60. The New York State Human Rights Law ("NYSHRL") provides: "It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." New York State Executive Law § 296(1)(a).

61. The New York State Human Rights Law not only prohibits sex discrimination generally but also makes it "an unlawful discriminatory practice for an employer … to refuse to provide reasonable accommodations to the … pregnancy-related conditions … of an employee." N.Y. Exec. Law § 296(3)(a)-(b).

62. Here, Plaintiff ANTONELLA SUAREZ was discriminated against because she was pregnant and faced a series of escalating adverse employment actions, including: (a) being advised to take unpaid days off to attend prenatal medical appointments rather than being offered any reasonable accommodation; (b) having her work hours reduced by fifty percent (50%) from approximately sixty (60) hours per week to thirty (30) hours per week shortly after Defendants learned of her pregnancy; (c) having her hours further reduced to approximately twenty (20) hours per week under the pretext of her and the company's "security"; and (d) being permanently removed from the work schedule and effectively terminated.

63. At no point did Defendants engage in any cooperative dialogue with Plaintiff or conduct any individualized assessment of Plaintiff's ability to perform her job duties. Instead, Defendants unilaterally reduced Plaintiff's hours and ultimately terminated her employment. Defendants' stated justification—that the reduction was for Plaintiff's and the company's "security"—was pretextual and bore no relation to any legitimate, non-discriminatory business purpose.

64. Defendants' conduct was willful or undertaken with reckless disregard of Plaintiff's protected rights under the NYSHRL.

65. As a result of Defendants' unlawful discriminatory practices, Plaintiff sustained injury in the form of economic damages, including back pay.

66. Due to Defendants' violations under the NYSHRL, Plaintiff is entitled to recover from Defendants: (1) back wages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs.

**COUNT IV**

**DISCRIMINATION IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW**

67. Plaintiff realleges and incorporates all the above allegations, pursued on an individual basis, of this Complaint as fully set forth herein.

68. The New York City Human Rights Law ("NYCHRL") prohibits discrimination in the terms, conditions, and privileges of employment providing that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

The New York City Administrative Code § 8-107(1).

69. At all relevant times, Defendants employed at least four (4) persons. Plaintiff ANTONELLA SUAREZ was an employee and qualified person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

70. Here, Plaintiff was discriminated against because she was pregnant and faced a series of escalating adverse employment actions, including: (a) being advised to take unpaid days off to attend prenatal medical appointments rather than being offered any reasonable accommodation; (b) having her work hours drastically reduced shortly after Defendants learned of her pregnancy; (c) having her hours further reduced under the pretext of her and the company's "security"; and (d) being permanently removed from the work schedule and effectively terminated.

71. Defendants operated a business that discriminated against Plaintiff on the basis of her pregnancy in violation of the NYCHRL. The New York City Human Rights Law makes it "an unlawful discriminatory practice" for any private employer to refuse a reasonable accommodation to an employee for "pregnancy, childbirth or related medical condition." N.Y.C. Admin. Code § 8-107(22)(a).

72. Defendants failed to engage in a cooperative dialogue with Plaintiff, as required under N.Y.C. Admin. Code § 8-107(28), to explore potential reasonable accommodations for her pregnancy-related condition. Instead, Defendants unilaterally and without any legitimate justification reduced Plaintiff's hours and ultimately terminated her employment.

73. Defendants' conduct was willful or undertaken with reckless disregard of Plaintiff's protected rights under the NYCHRL.

74. As a result of Defendants' unlawful employment practices, Plaintiff sustained injury in the form of economic damages, including back pay, and costs of bringing this action.

75. Due to Defendants' violation under the NYCHRL, Plaintiff is entitled to recover from Defendants: (1) compensatory damages; (2) punitive damages; and (3) attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c. An award of unpaid wages, including overtime, due to a policy of timeshaving, due under the FLSA and the NYLL;

d. An award of statutory penalties as a result of Defendants' failure to comply with wage statement and notice requirements under the NYLL;

e. An award of liquidated damages as a result of Defendants' willful failure to pay all wages pursuant to the FLSA or NYLL;

f. An award of pre-judgment and post-judgment interest, costs, and expenses of this action, together with reasonable attorneys' and expert fees;

g. An award of back pay, punitive damages, and compensatory damages due under the NYSHRL and NYCHRL;

h. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

i. Designation of this action as a class action pursuant to F.R.C.P. 23;

j. Designation of Plaintiff as a Representative of the Class; and

k. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: June 26, 2026

Respectfully submitted,

By: */s/ C.K. Lee*
C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**

C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*

*FLSA Collective Plaintiffs,*
*and the Class*